UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of July, two thousand twenty-three.

PRESENT:

    RICHARD J. SULLIVAN,
    BETH ROBINSON,
    MARIA ARAÚJO KAHN,
      *Circuit Judges.*

_____

JAMES CERISIER,

    *Plaintiff-Appellant*,

    v.                  No. 22-1756

CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER SAURABH SHAH, in his individual capacity,

    *Defendants-Appellees.*[*]

_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| | |
|---|---|
| **For Plaintiff-Appellant:** | NICHOLAS BOURLAND (Richard D. Emery, *on the brief*), Emery Celli Brinckerhoff Abady Ward & Maazel, LLP, New York, NY. |
| **For Defendants-Appellees:** | PHILLIP W. YOUNG (Richard Dearing, Melanie T. West, *on the brief*), *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY. |
| **For Amici Curiae NAACP Legal Defense and Educational Fund, Inc.** *in support of Plaintiff-Appellant*: | Ashok Chandran, Kevin E. Jason, Catherine Logue, NAACP Legal Defense and Educational Fund, Inc., New York, NY. |
| **For Amici Curiae Giffords Law Center to Prevent Gun Violence,** *in support of Plaintiff-Appellant*: | Amelia T. R. Starr, Davis Polk & Wardwell LLP, New York, NY. |
| **For Amici Curiae Institute for Justice,** *in support of Plaintiff-Appellant*: | Jaba Tsitsuashvili, Anna Goodman, Institute for Justice, Arlington, VA. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

James Cerisier appeals from the district court's grant of summary judgment in favor of Officer Saurabh Shah and the City of New York (the "City"), on his claims of excessive force under 42 U.S.C. § 1983 and assault under New York law, both stemming from a January 2019 traffic stop during which Officer Shah drew his gun and pointed it at Cerisier for seven to ten seconds. On appeal, Cerisier contends that the district court erred in holding that Officer Shah was entitled to qualified immunity. We review de novo a district court's grant of summary judgment, *see Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006), and will affirm when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

As relevant here, Officer Shah was on foot on the morning of January 28, 2019 conducting traffic enforcement on the Brooklyn-Queens Expressway. After witnessing Cerisier commit an illegal lane change, Officer Shah walked in front of Cerisier's vehicle – which was traveling "slowly" – and directed him to pull over. App'x at 69. Cerisier first noticed Officer Shah when he was about "15 to 20 feet away," and proceeded to stop his car within "a few seconds." *Id.* at 70–72, 208. Cerisier then began to change lanes after Officer Shah directed him to do so,

3

whereupon Officer Shah unholstered his weapon and pointed it at Cerisier for seven to ten seconds. As Cerisier drove to the right and beside Officer Shah, dashcam footage from Officer Shah's parked patrol car shows that Officer Shah lowered his firearm and ultimately holstered it after Cerisier pulled over. After speaking with Cerisier for less than a minute, Officer Shah let him go with a warning. Based on that series of events, Cerisier brought this action against Officer Shah and the City.

The doctrine of qualified immunity shields government officials from suit unless (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is within our "sound discretion" to take up these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, we need address only the second prong of the qualified-immunity test, without deciding whether Officer Shah's conduct did in fact violate Cerisier's Fourth Amendment rights.

In determining whether a right was "clearly established" at the time of the challenged conduct, we must frame the right in light of the specific context of the case, with all reasonable inferences drawn in Cerisier's favor. *See Tolan v. Cotton*,

572 U.S. 650, 657 (2014) (emphasizing the "importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard"). While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Furthermore, the Supreme Court has "repeatedly" instructed lower courts to avoid defining the right at "a high level of generality." *Id.* at 742. This is "especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and alterations omitted).

Cerisier argues that, at the time he was stopped, it was clearly established that the use of "significant force . . . without any justification" – in this case, "pointing a loaded gun at a non-threatening and non-resisting individual" – violates the Fourth Amendment. Cerisier Br. at 21, 25 (capitalization standardized). But Cerisier defines the right at much too high a level of generality. Critically, his proposed framing overlooks the specific context of this case – a traffic stop. *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (holding that a right

5

must be defined in light of the "particular circumstances" of the case). That context matters because the Supreme Court "has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment." *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). Traffic stops, the Court has explained, "are especially fraught with danger to police officers." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (internal quotation marks omitted); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (recognizing that officers face an "inordinate risk" when approaching a vehicle during a traffic stop). We accordingly define the right at issue here as the right not to be seized at gunpoint – even momentarily – by an officer attempting to effectuate a lawful traffic stop on foot when the driver is behind the wheel of a moving vehicle and is not affirmatively threatening or actively fleeing the police.

Cerisier has not cited any cases from this Circuit supporting his contention that such a right was clearly established at the time of the challenged conduct, and the out-of-circuit cases on which Cerisier relies do not suggest otherwise. As an initial matter, most of the cases Cerisier cites do not involve motor vehicles. *See, e.g.*, *Stamps v. Town of Framingham*, 813 F.3d 27 (1st Cir. 2016); *Mlodzinski v. Lewis*, 648 F.3d 24 (1st Cir. 2011); *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995);

6

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010); *McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992); *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007). The cases that do involve motor vehicles, meanwhile, are distinguishable from the circumstances here. In some cases, the challenged conduct involved the use of *physical force* against a suspect. *See, e.g.*, *Checki v. Webb*, 785 F.2d 534, 536 (5th Cir. 1986) (officers struck the plaintiff with a revolver and broke his companion's arm); *Deville v. Marcantel*, 567 F.3d 156, 162 (5th Cir. 2009) (officers broke the driver's side window of a vehicle, grabbed driver through the window, opened the door, and pulled her out of the vehicle). In other cases, the officer brandished his weapon for an extended period of time. *See, e.g.*, *Vanderhoef v. Dixon*, 938 F.3d 271, 275 (6th Cir. 2019) (two minutes); *Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018) (throughout the incident, even after the officer realized the plaintiff was not the suspect he was looking for); *Marceline v. Delgado,* No. 3:09-cv-1591 (VLB), 2011 WL 2531081, at *2 (D. Conn. June 23, 2011) (the entire encounter).

Cerisier's reliance on *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981), is similarly misplaced. There, an undercover detective driving an unmarked patrol car had a minor traffic altercation with the plaintiffs (a husband and wife), approached their car, and then threatened to shoot one of them. *Black*, 662 F.2d at 185. The court

7

held that "[f]or an unidentified officer to brandish his revolver eighteen inches from [the husband's] head with [the wife] in the precise line of fire and then threaten to shoot, is conduct that shocks the conscience." *Id.* at 189. Conversely, Officer Shah, while on duty and in uniform, pointed his weapon for seven to ten seconds while he was on foot and Cerisier was behind the wheel of his moving vehicle. Once Cerisier pulled over, Officer Shah holstered his gun and told Cerisier that he was free to leave. Based on these facts, we have no reason to conclude that Officer Shah's conduct was barred by clearly established law.

We have considered Cerisier's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

8